## No. 8973.

### EMERSON-BRANTINGHAM IMPLEMENT COMPANY *v.* SYLVESTER.

1. PRINCIPAL AND AGENT—*Agent with Limited Authority.*  Where a transaction is conducted and concluded, or expressly authorized and approved by the principal office of a corporation, the fact that it was instituted by a local agent will not entitle the principal to avail of any limitations in the authority of the latter.

2. EQUITY—*Jurisdiction.*  The defendant sold a bill of machinery to one H., the plaintiff becoming surety for H., for a portion of the amount, with the stipulation that when H. had paid a sum equal to that for which plaintiff stood as surety, plaintiff should be discharged.  H. having paid a larger sum defendant refused to discharge plaintiff threatening an assignment of the notes to third parties, a judgment by confession, and other troubles.  *Held*, that plaintiff was not required to await action of the defendant but might have his bill in equity to compel his discharge, and restrain the proceedings threatened by defendant.

*Error to Weld District Court, Hon. Neil F. Graham, Judge.*

Mr. FRANK L. GRANT, for plaintiff in error.

Mr. JOSEPH C. EWING, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

This is an action by the defendant in error to enjoin the collection as against him, and for the cancellation of his liability thereon, of four promissory notes signed by him as surety for one A. J. Hoover, aggregating the sum of $1,882.33. The case was tried to the court without a jury, and judgment rendered in accordance with the prayer of the complaint, which judgment is before us for review.

The testimony shows that plaintiff in error, through its agents, undertook to and did sell to the said A. J. Hoover a certain threshing machine and separator, for the total sum of $4,911.00, $500.00 of which was paid in cash, and the remainder by deferred payment notes. Sylvester signed but four of these notes, and in the aggregate sum of $1,882.33. In the negotiation for the sale, the Implement Company declined to accept Hoover alone for the payment of the total price for the machinery so purchased, and it was finally agreed that if Hoover could get some one financially responsible to sign notes, in the amount above stated, as involved in this suit, the sale would be consummated. The entire property so sold was to be covered by chattel mortgage on all the machinery.

The plaintiff was induced by Hoover and the company's agents to sign the notes to the extent stated, but not until he had secured the agreement that he was to be entirely released from the obligation, when Hoover should have paid on the entire purchase price a sum equal to $1,882.33, being the total amount represented by the notes he was to sign.

Sylvester joined Hoover in signing the application contract of purchase, to the extent of making a property statement, and there was written on the margin of this contract application, at the time and before Sylvester signed it, the following condition: "Sylvester is to be released as soon as $1,882.33 is paid on the Big Four engine and A-1 Geiser separator."

The machinery thus described was all that was included in the purchase price of $4,911.00. This application contract was forwarded to the branch house of the machinery company at Denver and accepted. Afterward the notes

were executed, and on the notes signed by Sylvester there was written on the back of each note the same words as in Sylvester's release upon the application contract. These notes were returned to the local agents of the company by the Denver branch office of the company, with the request that this provision as to the release of Sylvester should not be written on the notes, but on a slip of paper to be attached to the notes. Duplicate forms of notes were returned the local agents for that purpose, and Hoover and Sylvester signed them; the four notes were pinned together with a slip of paper on which was written the same provision concerning the release of Sylvester.

It is admitted that Hoover had paid about $2,500 on his contract, at least an amount in excess of his agreement, in addition to the cash payment, but that the machinery company had given the credit therefor upon the notes signed by Hoover alone, and insisted on the payment by Sylvester of each of the notes in full as signed by him.

Each of the notes contained the following confession of judgment and waiver clause:

"We hereby authorize and empower any attorney-at-law, at any time after interest or principal in this note becomes due, to appear for us before any court of record in the State of Colorado, or elsewhere, and waive the issuing and service of process upon us, entering our appearance therein and confess judgment against us and in favor of said Emerson-Brantingham Implement Company, payee, or its assigns, for said sum, interest and costs, including any attorney fee of ten per cent, and thereupon to release any and all error, and waive all right and benefit of a second trial or appeal in our behalf, also waiving the right of exemption and stay of execution. We also waive any and all notice of protest for non-payment; and in case the principal is not paid when due, we agree to pay a ten per cent attorney fee, whether suit is instituted on this note or not."

The machinery was delivered to and accepted by Hoover under this arrangement.

The statements of fact, as above set forth, were testified to by Sylvester and Hoover, and by Blystone, the soliciting agent of the company, and by E. H. Soper, engaged in the agricultural implement business, at Greeley, likewise a local agent of the machinery company, and all of whom assisted in the consummation of the agreement, and were cognizant of the facts.

The first contention of plaintiff in error is that there is not sufficient proof to sustain the finding by the court.

There is the positive testimony of Sylvester and Hoover and of the company's agents, Blystone and Soper, all in agreement and not contradicted as to the facts stated. But it is contended that Sylvester knew he was dealing with an agent of limited authority and failed to show any contract, with the marginal limitation which he claims to have signed and relied on, and which he says was pinned to the notes by the agent, or that these matters reached the company or were acted on by it.

The provision for release written on the margin of the contract did not appear on the instrument when offered in evidence, but it is plain from the evidence that the notes with the release written on the back were returned to Blystone, accompanied by a letter of instruction from the branch office of the company, asking the provision for release be written on a separate sheet of paper. Blystone testifies that he received this letter; Soper testifies that he read it; and both testify that they and plaintiff acted on it.

There is no suggestion that the Denver branch office of the company was without authority to so agree. The court was clearly justified in finding that this was with the knowledge of the company and in fact by its authority. Therefore the question of alleged limited authority of the local and soliciting agents is not involved and will not be discussed.

It is further contended that the complaint was insufficient in that it did not contain the essential allegations of a suit in equity. The complaint was not attacked by demurrer

or otherwise on this ground prior to the trial. But we think it is sufficient to sustain the action.

The complaint further alleged that the company, notwithstanding the premises and a full compliance with plaintiff's obligation, it willfully refused to recognize said agreement, and was attempting to enforce the collection of the said notes against him, and threatened to cause to be entered a confession judgment against him, and to sell the same before maturity to an innocent purchaser, and to otherwise harass him.

There was also the allegation of no complete, adequate or speedy remedy at law. We think that jurisdiction of courts of equity in this class of cases is well settled in this jurisdiction. *Travelers' Ins. Co. v. Jones,* 16 Colo. 515, 27 Pac. 807.

The reason for the rule is well stated in the early case of *Cornish v. Bryan,* 10 N. J. Eq. 146, where it was said that if a party holds an obligation which ought to be cancelled, and persists in holding it for the purpose of harassing the obligor with a suit, he ought not to be permitted to select his own time, place and circumstances for such prosecution. And that the mere fact that the grounds upon which the jurisdiction of a court is invoked may avail the party in such a case, in an action at law, and constitute a valid defense by plea or otherwise, is not a sound objection to the court's exercise of equity power.

In a precisely similar case, and likewise involving a judgment note, it was said in *Ginsbert v. Rubinowitz,* 20 Pa. Co. Co. 230:

"The serious question in this case is whether a court of equity has jurisdiction, and will intervene to prevent the confession of judgment on a note of this character and compel the holder to deliver it up for cancellation. That the defendant has no right to make any use whatsoever of the note is free from doubt, and that the plaintiff is entitled to have it surrendered and cancelled is clear and beyond dispute. In these circumstances must the plaintiff await an improper use of the note before he can move to assert

his rights in the premises, and then be compelled to invoke the equitable powers of the court to save him from the consequences of the defendant's wrongful act? It is in the power of the defendant, at his pleasure, to make it both expensive and inconvenient for plaintiff to defend himself against an attempt to collect this note, and the lapse of time may not only weaken, but actually defeat his defense to it. Moreover, the constant annoyance and hazard to which the plaintiff is subject by this outstanding note, in the hands of one who can assign no valid reason for retaining it, is calculated to harass and distress the plaintiff, and to do him irreparable injury."

The view we have taken in this respect is sustained by the great weight of authority.

The judgment is affirmed.

*En banc.*